## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

MICHAEL E. JACKSON,

     Plaintiff,

     v.

PLANET HOME LENDING, LLC,

     Defendant.

Civil Action No. TDC-20-0773

### MEMORANDUM OPINION

Plaintiff Michael E. Jackson, who is self-represented, has filed suit against Defendant Planet Home Lending, LLC ("Planet Home") alleging that from January to December 2019, Planet Home engaged in unlawful debt collection practices in relation to a mortgage loan for his residence in Glenarden, Maryland in violation of federal and state law. Planet Home has filed a Motion to Dismiss. In opposing the Motion, Jackson has filed a Motion to Strike Planet Home's Motion to Dismiss and a Motion for Sanctions. The Court has reviewed the Complaint and the briefs and finds no hearing necessary. For the reasons set forth below, the Motion to Dismiss will be GRANTED, and Jackson's Motion to Strike and Motion for Sanctions will be DENIED.

### BACKGROUND

Jackson's allegations are based on correspondence sent to him by Planet Home, which he has attached to his Complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012) (stating that on a Rule 12(b)(6) motion, courts are permitted to consider documents attached to a complaint "so long as they are integral to

the complaint and authentic" (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009))). Planet Home has attached to its Motion to Dismiss a copy of the docket in *DGDM v. Jackson*, No. CAEF18-44505 (Prince Geo. Cty. Cir. Ct.), a state court foreclosure proceeding related to the property at issue in this case. The Court takes judicial notice of that docket. *See* Fed. R. Evid. 201(b)(2); *see Lolavar v. De Santibanes*, 430 F.3d 221, 224 n.2 (4th Cir. 2005) (taking judicial notice of a state court docket sheet because a court may take judicial notice of "the records of a court of record").

## I.    The Foreclosure Proceeding

In September 2007, Jackson secured a mortgage loan in the amount of $249,000 for real property located at 7914 Fiske Avenue in Glenarden, Maryland ("the Property"). In December 2018, a complaint for foreclosure against the Property was filed in the Circuit Court for Prince George's County, Maryland. *See DGDM v. Jackson*, No. CAEF18-44505 (Prince Geo. Cty. Cir. Ct.) ("No. CAEF18-44505" or "the Foreclosure Proceeding"). On February 4, 2019, Jackson filed a counterclaim, followed on February 8, 2019 by a request for an emergency preliminary injunction. No. CAEF18-44505, Dkt. Nos. 11 & 12. The court construed Jackson's filings as Motions to Stay the Foreclosure and denied them on both substantive and procedural grounds. *Id.* Dkt. Nos. 17 & 18.

On April 17, 2019, an affidavit ("the Note Affidavit") dated April 8, 2019, signed by Thomas O'Connell, Senior Vice President of Planet Home, was docketed in the Foreclosure Proceeding as an attachment to the foreclosure complaint. *See id.* Dkt. No. 33; Note Affidavit, Compl. Ex. 7, ECF No. 3-1 (stating that the Note Affidavit was filed pursuant to Md. Code Ann., Real Prop. § 7-105.1(e)(2)(iii) and Md. Rule 14-207(b)(3)). The Note Affidavit has also been attached to Jackson's Complaint in the present case. Compl. Ex. 7. In the Note Affidavit,

2

O'Connell identifies Planet Home as the loan servicer for Wilmington Savings Fund Society, FSB ("Wilmington Savings") and states that Wilmington Savings "is the owner and holder of the debt instrument evidenced by the note" at issue in the Foreclosure Proceeding. *Id.*

On April 29, 2019, the court approved the requisite foreclosure sale bond. *See* No. CAEF18-44505, Dkt. No. 24; Md. Rule 14-213 (West 2020) (stating that "the individual authorized to make the [foreclosure] sale shall file a bond to the State of Maryland").

On May 22, 2019, the Foreclosure Proceeding was stayed following Jackson's filing for bankruptcy. *See* No. CAEF18-44505, Dkt. No. 27; *In re Jackson*, No. 19-16796 (Bankr. D. Md.). That stay was lifted on September 10, 2019. No. CAEF18-44505, Dkt. No. 28. However, the proceedings were again stayed on October 3, 2019 after Jackson filed another petition for bankruptcy. *Id.* Dkt. Nos. 29 & 30; *In re Jackson*, No. 19-22959 (Bankr. D. Md.). That second stay was lifted on January 22, 2020. No. CAEF18-44505, Dkt. No. 31. That same day, Jackson filed in the Foreclosure Proceeding a Motion to Stay and Dismiss and Proceed against Surety and upon Bond. *Id.* Dkt. No. 32. On February 6, 2020, Jackson filed a Motion for Injunction to Stay Foreclosure Sale. *Id.* Dkt. No. 35. On June 3, 2020, the court denied both motions, finding that they did not "state a valid defense to the validity of the lien or the lien instruments or the right of the plaintiff to foreclose in the pending action," and failed "to state a meritorious factual or legal basis" to stay or dismiss the foreclosure. *Id.* Dkt. Nos. 44 & 45.

At some point before September 29, 2020, the Property was sold, and on October 13, 2020, the court ratified the sale. *Id.* Dkt. No. 55. In the months before and after the sale, Jackson filed various motions seeking to invalidate the foreclosure and sale, all of which were denied. *See id.* Dkt. Nos. 47, 52, 59, 60, 61 (motions) and 48, 58, 62, 63, 64 (orders).

On April 8, 2021, the court issued a judgment awarding possession, and on April 13, 2021, the Foreclosure Proceeding was closed. *See id.* Dkt. Nos. 70, 71.

## II.    Debt Collection

Jackson's Complaint in the present case attaches as exhibits, and challenges the legality of, 13 letters or notices sent to him by Planet Home after the institution of the Foreclosure Proceeding. In a January 23, 2019 letter ("the Assignment Letter"), Planet Home informed Jackson that on January 16, 2019, ownership of his mortgage had been transferred to Bantam Funding Trust 2018-1 ("Bantam"), with Planet Home as the loan servicer, in which capacity it was authorized to act on behalf of the owner to "rescind and resolve issues concerning borrower payments on the loan." Compl. Ex. 1, ECF No. 3-1. The letter provides mailing addresses and telephone numbers for both Bantam and Planet Home, but states that "[t]his notice does not change the address where you send your mortgage loan payments" and that partial payments would be accepted but held in a separate account. *Id.* The Assignment Letter does not contain any information about the loan balance, payments due, or payment due dates. A disclaimer at the end of the letter states, "This communication is being sent for compliance and/or informational purposes only, and is not an attempt to collect a debt or impose personal liability on the recipient except as permitted by law." *Id.* Jackson asserts that this letter violated various debt collection statutes because, based on a purported "Mortgage Compliance Investigation" completed by Joseph R. Esquivel, Jr., a private investigator licensed in Texas, "the original tangible writing declaring the alleged debt was never sold, assigned or transferred to Planet." Compl. at 3, ECF No. 1.

In a February 21, 2019 letter, Planet Home informed Jackson that his total mortgage debt was $408,817.48, a figure that included principal, accrued interest, an escrow advance balance, and a corporate advance, and stated that his account was past due. The letter identified Planet

4

Home as "a debt collector attempting to collect a debt," and stated that unless Jackson disputes the validity of the debt within 30 days, Planet Home will assume the debt is valid. Compl. Ex. 3, ECF No. 3-1. The letter also stated that "[i]f you notify us, in writing, within 30 days after you receive this notice that you dispute this debt, or any portion thereof, we will obtain verification of the debt or a copy of the judgment against you and mail a copy to you." *Id.*

Planet Home also sent Jackson a mortgage loan statement dated February 28, 2019 stating in the "Amount Due" box that the "Amount Due to Reinstate" was $215,731.39. Compl. Ex. 4, ECF No. 3-1. The statement also included a "Delinquency Notice" stating that Jackson was delinquent on his mortgage loan, that a foreclosure notice or filing had been made on December 6, 2018, and that Jackson's failure to cure the delinquency "may result in additional fees and foreclosure—the loss of your home." *Id.* Similar statements were sent in March, April, and May 2019 with each statement including an "Amount Due to Reinstate," revised to reflect Jackson's new balance, and the same "Delinquency Notice" as provided on the February 2019 statement, except updated to reflect the number of days Jackson's mortgage was past due. Compl. Exs. 5, 8, 9, ECF No. 3-1.

Meanwhile, in a letter to Planet Home dated April 3, 2019 and entitled "NOTICE OF DEBT DISPUTATION," Jackson informed Planet Home, "I feel compelled to dispute the alleged debt this company says I owe" and thus stated that he "now require[s] strictly sworn-to verification of its existence, in accord with the Fair Debt Collection Practices Act." Compl. Ex. 6, ECF No. 3-1. In the Complaint, Jackson asserts that Planet Home "never directly provided me verification" in response to this letter. Compl. at 4. In a second letter to Planet Home dated May 23, 2019 and entitled "SECOND NOTICE IN CONTINUED DEBT DISPUTE," Jackson reiterated that he had requested validation of his mortgage loan debt, noted that he had not received a response to his

5

first request, and requested an opportunity to inspect the original note and deed of trust.  Compl. Ex. 10, ECF No. 3-1.

In a letter to Jackson dated June 11, 2019, Planet Home addressed a complaint he had filed with the Consumer Financial Protection Bureau ("CFPB") disputing the validity of his mortgage loan.  The letter stated that on February 20, 2019, Planet Home had received correspondence sent on his behalf by McDonnell Property Analytics requesting documents to validate Jackson's mortgage debt and that Planet Home had responded to that request on April 3, 2019.  The letter further stated that in 2018, Jackson had made a similar request of Kirkland Acquisitions LLC ("Kirkland"), the prior mortgage servicer, and that Kirkland had responded with documents to validate the debt.  Planet Home attached copies of its April 3, 2019 response and Kirkland's prior response to the requests for debt validation.

In June and July 2019, Planet Home sent to Jackson mortgage loan statements similar to those sent in the prior months, but with modifications made in light of his May 2019 bankruptcy petition.  The statements contained a "Payment Amount," rather than an "Amount Due to Reinstate," and no longer contained a Delinquency Notice.  *See, e.g.*, Compl. Ex. 12, ECF No. 3-1.  Instead, they included a "Bankruptcy Message."  *Id.*  In the June 2019 statement, that section read, "We are sending this statement to you for informational  and compliance purposes only.  It is not an attempt to collect a debt against you.  If you want to stop receiving statements, write to us."  *Id.*  The statement included assessments for foreclosure attorney fees and foreclosure sale costs.  In the July 2019 statement, the Bankruptcy Message contained the same statements but with the addition, "If your bankruptcy plan requires you to send your regular monthly mortgage payments to the Trustee, you should pay the Trustee instead of us.  Please contact your attorney or the Trustee if you have questions."  Compl. Ex. 13, ECF No. 3-1.  The July 2019 statement listed

a payment amount of $181,432.66, with a statement that the amount "does not include any amount that was past due before you filed for bankruptcy." *Id.* The statement also included a new section tracking "pre-petition arrearage," showing the "amounts that were past due when you filed for bankruptcy" and stating that the bankruptcy trustee would be "sending us the payments shown here," which were "separate from your regular monthly mortgage payment." *Id.*

A September 16, 2019 mortgage statement, dated after the stay had been lifted in Jackson's first bankruptcy case, returned to listing the "Amount Due to Reinstate," which at that point was $233,781.35 and included an accelerated amount due to pay off the loan, calculated at $445,999.86. Compl. Ex. 14, ECF No. 3-1. The October, November, and December 2019 statements, each of which was issued after Jackson had filed his second bankruptcy petition, returned to the July 2019 statement format. Compl. Exs. 15, 16, 17, ECF No. 3-1.

On February 24, 2020, Jackson filed the Complaint in this case in the Circuit Court for Prince George's County. Planet Home removed the case to this Court. In the Complaint, Jackson alleges that the correspondence discussed above, Planet Home's alleged failure adequately to respond to his debt disputes, and the filing of the Note Affidavit asserting ownership of the note in the Foreclosure Proceedings violated certain provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p (2018), specifically, 15 U.S.C. § 1692e(2)(A), (9)–(13); 15 U.S.C. § 1692f(1); and 15 U.S.C. §1692g(a)(1), (3)–(5). Jackson also alleges that violations of provisions of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201–14-204 (West 2013), specifically sections 14-202(3), (8)–(11); the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-301–13-501, specifically sections 13-301(1), (2)(i)(ii)(iv), (3), (4), (9)(i)(iii), (14)(iii); 13-303(5); and 13-316(b)(2)–(5), (c)(1)–(2);

7

and provisions of the Maryland Collection Agency Licensing Act ("MCALA"), Md. Code Ann., Bus. Reg. §§ 7-101–7-502 (West 2021), specifically section 7-401(a).

## DISCUSSION

In their Motion, Planet Home seeks dismissal of the Complaint, primarily arguing that Jackson's claims are barred by the doctrines of *res judicata* and collateral estoppel because they amount to attempts to relitigate issues resolved in the Foreclosure Proceeding. Alternatively, Planet Home argues that Jackson's Complaint does not allege plausible violations of the FDCPA and the various state statutes.

## I.     Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, a self-represented plaintiff must still carry "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

**II.**   ***Res Judicata* and Collateral Estoppel**

Planet Home asserts that Jackson's current claims are effectively challenges to the validity of the Foreclosure Proceeding and that Jackson is thus precluded from pursuing them. As to the bulk of Jackson's claims, Planet Home is correct.

*Res judicata* mandates that "once a matter—whether a claim, an issue, or a fact—has been determined by a court as the basis for a judgment, a party against whom the claim, issue, or fact was resolved cannot relitigate the matter." *In Re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 325 (4th Cir. 2004). Collateral estoppel, also known as issue preclusion, is a subset of *res judicata. Id.* at 326. Under Maryland law, collateral estoppel applies where (1) the issue to be precluded is identical to one previously decided; (2) there was a final judgment on the merits; (3) the party against whom estoppel is to be applied was a party or in privity with a party in the prior adjudication; and (4) the party against whom estoppel is to be applied was given a fair opportunity to be heard on the issue. *Leeds Fed. Sav. & Loan Ass'n v. Metcalf*, 630 A.2d 245, 250 (Md. 1993); *see Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008) (holding that the "preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered"). *Res judicata* may be raised on a Rule 12(b)(6) motion to dismiss if the defense raises no disputed issues of fact. *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000); *Thomas v. Consol. Coal Co.*, 380 F.2d 69, 75 (4th Cir. 1967).

The vast majority of the provisions of the FDCPA, MCDCA, and MCPA that Jackson alleges were violated by Planet Home bar the making of false statements either about particular consumer goods or about the status of a debt. Specifically, Jackson relies on provisions of the FDCPA which prohibit "the false representation of the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A); the use of "any written communication which simulates or is

9

falsely represented to be a document authorized, issued, or approved by any court, official or agency of the United States or any State," *id.* § 1692e(9); the "use of any false representation or deceptive means to collect or attempt to collect a debt," *id.* § 1692e(10); and "the false representation . . . that accounts have been turned over to innocent purchasers for value," *id.* § 1692e(12). He also relies on the FDCPA provision barring the collection of any amount "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

The relevant provision of the MCDCA states that in attempting to collect a debt, a collector may not "[d]isclose or threaten to disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false," "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist," "[u]se a communication which simulates legal or judicial process or gives the appearance of being authorized, issued, or approved . . . when it is not," communicate with a debtor in a way that deceptively "simulates legal or judicial process," engage in unlicensed debt collection in violation of the MCALA, or violate the FDCPA. Md. Code Ann., Com. L. §§ 14-202(3), (8)–(11). The relevant provisions of the MCPA make it unlawful to "engage in any unfair or deceptive trade practice" in "[t]he collection of consumer debts," Md. Code Ann., Com. Law § 13-303(5). An "unfair or deceptive trade practice" includes making a "[f]alse, falsely disparaging, or misleading oral or written statement ... which has the capacity, tendency, or effect of deceiving or misleading consumers"; misrepresenting the characteristics, sponsorship, or quality of consumer goods; failing "to state a material fact if the failure deceives or tends to deceive"; disparaging realty through a "false or misleading representation of a material fact"; engaging in "deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact," with

the intent that a consumer rely on it, in connection with the sale of consumer realty or the performance of an agreement of sale; and violating certain provisions of the MCDCA. *Id.* §§ 13-301(1), (2)(i)(ii)(iv), (3), (4), (9)(i)(iii), (14)(iii).

The only allegations in the Complaint relating to the falsity of, or misrepresentations in, communications by Planet Home are the assertions that the January 23, 2019 Assignment Letter was false "because the original tangible writing declaring the alleged debt was never sold, assigned or transferred to Planet," Compl. at 3, and that the Note Affidavit "fails in its attempts" to establish that Bantam Funding Trust, for whom Planet Home acted as trustee, was the owner and holder of the mortgage loan, *id.* at 5. Jackson's FDCPA, MCDCA, and MCPA claims based on false statements and misrepresentations are thus necessarily predicated on Jackson's ability to establish that Planet Home was not the lawful holder of the mortgage and thus not entitled to foreclose. Because these issues were litigated and resolved against Jackson in the Foreclosure Proceeding, these claims are barred by collateral estoppel.

On the first element of collateral estoppel, whether the issue being litigated here is identical to the issue previously decided, in the Foreclosure Proceeding, the state court was required to decide, first, whether the Property could be lawfully foreclosed upon, and, ultimately, whether the sale of the Property in foreclosure was conducted in a fair and authorized manner. The Foreclosure Proceeding thus examined and resolved the specific issues of the validity of mortgage and the right to foreclose on the Property. The first element of collateral estoppel is therefore satisfied.

As to the second element, there has been a final judgments on the merits. Under Maryland law, an order directing the sale of property is immediately appealable and can be considered a final order. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-301, 12-303(3)(v) (West 2020); *Morgan v. Morgan*, 510 A.2d 264, 270 (Md. Ct. Spec. App. 1986). Thus, a final ratification of the sale of

property has preclusive effect. *See Jacobsen v. Barrick*, 250 A.2d 646, 648 (Md. 1969) (holding that under Maryland law, "the final ratification of the sale of property in a foreclosure proceeding is *res judicata* as to the validity of such sale"); *Scott v. Bierman*, 429 F. App'x 225, 230 (4th Cir. 2011) (finding that under Maryland law, an order of ratification "provided a final resolution of all matters relating to the foreclosure sale"). Accordingly, the Order of Ratification in the Foreclosure Proceeding approving the sale of the Property was a final judgment on the merits for purposes of collateral estoppel.

As to the third and fourth elements, privity and an opportunity to be heard, Jackson was a party to the Foreclosure Proceeding and had a full and fair opportunity to be heard on the prior adjudication of the sale of the Property. Indeed, Jackson vigorously litigated the issue, filing over 10 motions challenging the validity of the mortgage and the right to foreclose. Because Jackson was a party to the Foreclosure Proceeding and fully litigated the issues of the validity of the mortgage and the right to foreclose, all elements necessary for the application of collateral estoppel have been established.

Jackson's FDCPA, MCDCA, and MCPA claims based on claims of false statements or misrepresentations, as enumerated above, will thus be dismissed with prejudice. Jackson, however, has other claims under these statutes not subject to collateral estoppel because the specific statutory provisions at issue prohibit certain procedures for debt collection, and Planet Home's adherence to those debt collection procedures was not addressed in, and thus not resolved by, the Foreclosure Proceeding. *See, e.g., Senftle v. Landau*, 390 F. Supp. 2d 463, 469–70 (D. Md. 2005) (holding that an FDCPA claim "pertaining to the manner in which [the defendant] collected [the] debt" was not an appeal of the state court determination that the plaintiff owed the underlying debt). These causes of action consist of FDCPA claims alleging violations of 15 U.S.C. §

1692e(11) and §1692g; MCPA claims alleging a violation of Md. Code Ann., Com. Law § 13-316; and MCDCA claims alleging violations of Md. Code Ann., Com. Law §§ 14-402(10) and (11), which provide that violations of the MCALA and the FDCPA also constitute violations of the MCDCA. The Court will thus turn to the sufficiency of Jackson's allegations on these remaining claims.

## III.     Failure to State a Claim

### A.     FDCPA

"The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." *United States v. Nat'l Fin. Servs., Inc.,* 98 F.3d 131, 135 (4th Cir. 1996). To state a claim under the FDCPA, Jackson must allege that (1) he has been the object of collection activity arising from consumer debt; (2) Planet Home is a debt collector as defined by the FDCPA; and (3) Planet Home has engaged in an act or omission prohibited by the FDCPA. *Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 524 (D. Md. 2013) (citations omitted); *see also Levins v. Healthcare Revenue Recovery Grp. LLC,* 902 F.3d 274, 280 (3d Cir. 2018). Planet Home does not dispute the first two elements and instead argues generally that Jackson fails to allege that Planet Home engaged in any of the specific collection practices prohibited by the FDCPA.

#### 1.     15 U.S.C. § 1692e(11)

This provision of the FDCPA prohibits the "failure to disclose in the initial written communication with the consumer ... that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector." 15 U.S.C. § 1692e(11). The

13

statute exempts from this requirement "a formal pleading made in connection with a legal action." *Id.*

Jackson pursues a § 1692e(11) claim only as to the Note Affidavit, which was filed in the Foreclosure Proceeding pursuant to Md. Code Ann., Real Prop. § 7-105.1(e)(2)(iii) and Md. Rule 14-207(b)(3). Together, section 7-105.1(e)(2)(iii) and Rule 14-207(b)(3) require that a copy of the debt instrument and an affidavit certifying ownership of the debt instrument be filed as exhibits to a complaint to foreclose a mortgage or deed of trust on residential property. The Note Affidavit, as the affidavit certifying ownership of the debt instrument, is thus "part of the pleading for all purposes," placing it outside the ambit of § 1692e(11). Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). *See N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 453 (7th Cir. 1998) (interpreting "written instrument" to include, affidavits, contracts, and loan documentation). Jackson's § 1692e(11) claim will be dismissed.

### 2.    15 U.S.C. § 1692g

Under this provision of the FDCPA, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," a debt collector must disclose certain information. 15 U.S.C. § 1692g(a). Specifically, a debt collector must send the consumer a written debt validation notice containing:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(1)–(5). A communication is "in connection with the collection of any debt," and thus falls within the scope § 1692g, "if a consumer receiving a letter could reasonably understand it to be a communication in connection with the collection of a debt." *Hart v. FCI Lender Servs. Inc.*, 797 F.3d 219, 225 (2d Cir. 2015). This is an "objective standard" that "determines the apparent purpose of a communication with an eye towards a consumer's understanding." *Id.* In considering how a communication would be interpreted by a consumer, courts should assess how the "least sophisticated consumer" would interpret the communication, which is an objective standard. *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 394–95 (4th Cir. 2014) (finding that this standard is an "objective" one and applying it in the context of § 1692e) (quoting *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136). Jackson asserts that the January 23, 2019 Assignment Letter, the April 8, 2019 Note Affidavit, Planet Home's alleged failure to respond timely to his April 3, 2019 debt dispute letter, and Planet Home's June 11, 2019 letter to him in response to a CFPB complaint each violated various provisions of § 1692g.

Jackson's §1692g claim that the Assignment Letter violated § 1692g(1) and (3)–(5) turns on whether the Assignment Letter was an "initial communication" triggering Planet Home's § 1692g obligations. Evaluating the Assignment Letter from the point of view of the least sophisticated consumer, the Court concludes that it cannot reasonably be construed as "communication in connection with the collection of any debt." 15 U.S.C. § 1692g(a). The Assignment Letter makes no demand for payment, states no outstanding balance, makes no assertion that a debt is owed, and sets no deadline for payment of a debt. In fact, the letter does not demand or request any action on the part of Jackson. Under these circumstances, even the

most "naïve" consumer would not construe the Assignment Letter as an attempt to collect a debt. *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 234 (4th Cir. 2015) (stating that the "least sophisticated consumer standard" assumes "a quotient of reasonableness and a basic level of understanding and willingness to read with care") (citation omitted). *See Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) ("[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor."). Jackson has thus failed to state a plausible § 1692g claim based on the Assignment Letter.

As to § 1692g claims based on the April, 8, 2019 Note Affidavit and the June 11, 2019 Planet Home letter, those claims also fail. Section 1692g does not require a debt validation notice in all communications between a debt collector and a consumer, only that the statutorily required debt validation notice be made within five days of the "initial communication" with a consumer "in connection with the collection of any debt." 15 U.S.C. § 1692g(a). Planet Home expressly designated its February 21, 2019 letter to Jackson as a communication about a debt, that letter contained a debt validation notice, and Jackson does not challenge the sufficiency of that notice. Because the debt validation notice requirement of § 1692g was satisfied as to Jackson's debt, and the subsequent Note Affidavit and June 11, 2019 letter related to the same debt, Jackson's § 1692g claims based on those communications cannot succeed. Finally, Jackson's claim based on his April 3, 2019 debt dispute letter fails because § 1692g does not impose a requirement to respond to consumer requests, so it does not provide a basis to challenge Planet Home's alleged failure to respond to the April 3, 2019 letter.

Jackson's § 1692g claim will therefore be dismissed. Because Jackson's remaining FDCPA claims will be dismissed, his claim under section 14-402(11) of the MCDCA, which provides that a violation of the FDCPA is also a violation of the MCDCA, will also be dismissed.

### B.    MCPA

Although Jackson asserts that Planet Home violated Md. Code Ann., Com. Law §§ 13-301(1); (2)(i)(ii)(iv), (3), (4), (9)(i)(iii), (14)(iii), these provisions of the MCPA merely define terms used throughout the MCPA and do not provide specific causes of action that could be asserted by a plaintiff. *See id.* (titled "Unfair or deceptive trade practices defined"). Thus, any MCPA claims based only on section 13-301 will be dismissed.

The only remaining MCPA claim is based on Md. Code Ann., Com. Law § 13-316, which sets forth requirements for mortgage servicers. Section 13-316(b) mandates initial disclosures from a mortgage servicer, which must be made within seven days of acquiring the mortgage. Specifically, a mortgage servicer is required to send a mortgagor written notice of:

> (1) The name, address, and telephone number of the new servicer and the address where mortgage payments are to be forwarded;
> (2) The principal balance and escrow balance of the mortgage loan;
> (3) The telephone number of the contact designated under subsection (c) of [section 13-316];
> (4) The responsibilities of the contact under subsection (c) of [section 13-316]; and
> (5) A statement that the servicer's violation of this section will result in the servicer being held liable under subsection (e) of [section 13-316].

Md. Code Ann., Com. Law § 13-316(b)(1)–(5). Subsection 13-316(c) requires that (1) a mortgage servicer designate a contact person to whom mortgagors may direct complaints and inquiries; and (2) the contact person shall respond in writing to each written complaint or inquiry within 15 days if requested. *Id.* § 13-316(c)(1)–(2).

As with his § 1692g claim, Jackson asserts that the Assignment Letter, the Note Affidavit, Planet Home's alleged failure timely to respond to his April 3, 2019 debt dispute letter, and Planet Home's June 11, 2019 letter to Jackson in response to a CFPB complaint each violated various provisions of section 13-316. Specifically, he asserts that the Assignment Letter violated sections 13-316(b)(2)–(5) and (c)(1), and that the remaining documents violated section 13-316(c)(2).

17

As to the Assignment Letter, Jackson has plausibly alleged facts showing a failure to meet some of the statutory requirements. The Assignment Letter, dated January 23, 2019, stated that Planet Home acquired Jackson's mortgage on January 16, 2019. The letter was thus sent to Jackson within the seven-day period required by section 13-316(b), it designated a mortgage servicer as a point of contact for mortgagors, and it provided the telephone number of that mortgage servicer. It thus provided the information required by sections 13-316(b)(3) and (c)(1). The Assignment Letter, however, did not provide the principal balance and escrow balance, did not state that the contact is required to respond in writing to written complaints within 15 days if requested, and did not include a statement that a violation of section 13-316 will result in Planet Home being held liable under section 13-316(e). Based on these deficiencies apparent on the face of the Assignment Letter, Jackson has plausibly alleged that Planet Home did not meet the requirements of sections 13-316(b)(2), (4), and (5).

As to the claims that the other documents violated section 13-316(c)(2), that provision merely sets forth an obligation of a mortgage servicer to respond within 15 days to written complaints or inquiries when so requested. It does not establish any requirements or limitations relating to the content of these responses. Jackson's April 3, 2019 Notice of Debt Disputation did not specifically request a written response, stating instead that Jackson "now requires strictly sworn-to verification" of the debt's existence. Compl. Ex. 6. Where the Note Affidavit, dated April 8, 2019, provided such sworn-to verification and was submitted within 15 days of Jackson's April 3, 2019 Notice, Jackson cannot plausibly claim a section 13-316(c)(2) violation arising from these documents. Likewise, the June 11, 2019 letter, which was a response to a complaint sent to CFPB received on June 3, 2019 complaint, does not reveal a violation of section 13-316(c)(2).

18

To the extent that Jackson has properly alleged one or more violations of section 13-316, however, a private party bringing a cause of action under the MCPA must still allege "an actual injury or loss." *Lloyd v. General Motors Corp.*, 916 A.2d 257, 277 (Md. 2007); *see Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 467 (D. Md. 2013). Section 13-316(e) renders a mortgage servicer liable only "for any economic damages caused by the violation" of any part of section 13-316. Here, Jackson asserts that as a result of Planet Home's alleged debt collection violations, he suffered from "mental anguish and emotional distresses of shock, anger, fear, nervousness, anxiety, frustration, paranoia, loss of appetite, headaches, sleeplessness and the overall loss of the enjoyment of life." Compl. at 8. He does not allege any economic damages or pecuniary loss. *See Marchese*, 917 F. Supp. 2d at 468 (holding that the plaintiff sufficiently pleaded actual injury or loss under the MCPA where he alleged that he suffered "bogus late fees," damage to his credit, and attorney's fees); *Cole v. Federal Nat'l Mortg. Ass'n*, No. GJH-15-3960, 2017 WL 623465, at *8 (D. Md. Feb. 14, 2017) (holding that the plaintiff sufficiently pleaded damages under the MCPA where she alleged that the defendant's failures to respond "resulted in the continual assessment of accruing interest, fees and costs on the mortgage account," as well as "stress, physical sickness, headaches, sleep deprivation, worry, and pecuniary expenses"). Because Jackson identifies no economic loss as a result of the remaining section 13-316 claims, he fails to state a viable claim under that statute. *See Lloyd*, 916 A.2d at 277.

### C.     MCALA

Jackson alleges violations of the MCALA, which makes it illegal for a person to do business in Maryland as a collection agency without a state license. Md. Code Ann., Bus. Reg. § 7-401(a). The statutory language, however, sets forth only criminal penalties and does not itself create a private right of action. *Id.* § 7-401(b); *See Fontell v. Hassett*, 870 F. Supp. 2d 395, 410

(D. Md. 2012) ("[T]he MCALA does not give rise to a private right of action."). Asserted independently, Jackson's MCALA claims thus necessarily fail.

Relatedly, the MCDCA makes it illegal to "[e]ngage in unlicensed debt collection activity in violation of [MCALA]," Md. Code Ann., Com. Law § 14-202(10), and Jackson's only remaining MCDCA claim alleges violations of this MCDCA subsection. Further, violations of MCALA may constitute violations of the FDCPA. *See Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 729 (D. Md. 2011) ("[T]his Court holds that a violation of Maryland's MCALA licensing requirement may support a cause of action under the FDCPA.").

Here, however, Jackson nowhere alleges that Planet Home was not licensed to act as a collection agency, only that it engaged in unlawful debt collection practices. Because Jackson fails to establish the necessary factual predicate for a MCALA claim, the MCDCA and FDCPA claims derived from a violation of the MCALA will be dismissed. *See Hall,* 935 F.2d at 1110 (emphasizing that a *pro se* plaintiff must still carry "the burden of alleging sufficient facts on which a recognized legal claim could be based").

## IV.    Other Filings

In opposing Planet Home's Motion to Dismiss, Jackson included a Motion to Strike, in which he asks the Court to strike the Motion to Dismiss because "Planet's assertions of res judicata fail." Mot. Strike at 3, ECF No. 25. The Motion to Dismiss was procedurally sound, and for the reasons set forth above, the Court finds merit, at least in part, in Planet Home's *res judicata* arguments, so Jackson's Motion to Strike will be denied. For similar reasons, the Court will deny Jackson's Motion for Sanctions, which largely reiterates the allegations made in his Complaint.

Jackson also submitted a filing entitled, "Demand for Anti-Bribery Statements and Foreign Agent Registration Act/FARA Statements," ECF No. 23, in which he requests that this Court

provide him with those two documents, and a filing entitled "Demand for Underwriter Participation Certificate Disclosures," ECF No. 24, in which he asks the Clerk of Court to provide the named certificates.  Because Jackson has provided no persuasive legal authority or factual basis to justify the granting of these requests, the Court will deny them.

## CONCLUSION

For the reasons set forth above, Planet Home's Motion to Dismiss, ECF No. 18, will be GRANTED, and the Complaint will be dismissed. Jackson's Motion to Strike, ECF No. 25, and Motion for Sanctions, ECF No. 26, will be DENIED.   A separate Order shall issue.

Date:  May 28, 2021

THEODORE D. CHUANG
United States District Judge